**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **L.M.**

**No. 21-0910** (Barbour County 19-JA-27)

**MEMORANDUM DECISION**

Petitioner Father C.H., by counsel Ira A. Richardson, appeals the Circuit Court of Barbour County's October 8, 2021, order terminating his parental rights to L.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Mary S. Nelson, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights when services were unavailable to him due to the COVID-19 pandemic. He further asserts that the circuit court erred in denying him post-termination visitation with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed a child abuse and neglect petition alleging that the mother's live-in boyfriend regularly discharged a firearm into the walls of the home, destroyed furniture, and threatened the family while L.M. was present, and that L.M. witnessed the live-in boyfriend shoot the family cat in the kitchen. The DHHR further alleged that the live-in boyfriend committed domestic violence against L.M.'s sibling not at issue on appeal. According to the DHHR, the maternal grandmother obtained a domestic violence protective order against the mother and the live-in boyfriend, and the children were removed from the home. Regarding

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). The original style of the case included another child, but this child is no longer at issue as he has reached the age of majority.

1

petitioner, the DHHR alleged that he had not had contact with L.M. in many years; had not provided support, financial or otherwise; and had abandoned L.M.

In early March of 2019, the court held a preliminary hearing. Petitioner appeared intoxicated and, after having been placed under oath, stated that he had consumed twelve beers the night prior, drank a couple of beers that morning, is prescribed Klonopin, and is an alcoholic. The sheriff's department administered a preliminary breathalyzer test, and petitioner registered a blood alcohol content of .294. Upon hearing petitioner's testimony as well as that of the mother, the court determined that petitioner had not had contact with then-thirteen-year-old L.M. since the child was four years old and that petitioner was in arrears for child support. The court further found that petitioner's short stints of sobriety were the result of his incarcerations for numerous domestic battery charges. The court ratified the child's removal, denied petitioner supervised visitation, and ordered petitioner to submit to regular alcohol and drug screening.

As a result of the court's findings at the preliminary hearing, the DHHR filed an amended petition in March of 2019 adding allegations that petitioner appeared extremely intoxicated at the hearing, that petitioner severely abused alcohol and potentially other substances, and that he was "woefully" behind in child support. Petitioner waived his right to a preliminary hearing on the amended petition in March of 2019.

By August of 2019, the court held an adjudicatory hearing during which petitioner stipulated to the allegations of abuse and neglect contained in the amended petition. The court accepted the stipulations and adjudicated him as an abusing parent. Along with petitioner's stipulation, petitioner testified that he began drinking alcohol at age fifteen; he lost his driver's license at age sixteen; and at his current age of thirty-two, his sole income is social security disability due to his diagnosis of ataxia caused by his chronic alcoholism. The court, having admired petitioner's honesty, granted him a post-adjudicatory improvement period.

At a dispositional hearing held in November of 2019, petitioner moved the circuit court to implement a "SCRAM" bracelet, a device worn by the participant that continuously monitors blood alcohol content. Petitioner argued that due to his disability and lack of transportation, he was unable to attend regular drug and alcohol screenings. The court granted petitioner's motion, and the DHHR accommodated petitioner by providing him with a SCRAM bracelet.

Petitioner filed a motion for an extension to his improvement period in April of 2020, citing his abstention from alcohol while wearing the SCRAM bracelet. He further argued that although he was required to undergo a parental fitness and psychosocial evaluation, scheduling the evaluation had been "impossible" due to the COVID-19 pandemic. The court granted petitioner an extension to his improvement period.

In March of 2021, the circuit court held a final dispositional hearing. The DHHR presented evidence that although petitioner initially participated in services such as telephonic supervised visits, drug and alcohol screening with the SCRAM bracelet, and attending multidisciplinary team meetings ("MDT"), he ceased all participation in services around May of 2020. The DHHR worker testified that petitioner never called her and he did not return her phone calls or leave voice mails. She also stated that petitioner failed to complete a psychological evaluation despite the DHHR

accommodating him by scheduling the service at a local healthcare provider. The worker testified that petitioner did not provide gifts or cards for the child.

The visitation provider testified that petitioner last attended visits with the child in April of 2020, and the three visits that month were held virtually due to the COVID-19 pandemic. However, she stated that petitioner ceased participation in all visits after April of 2020 and when she obtained a new phone number for petitioner, he did not answer her calls. Another worker testified that she met petitioner at the MDT meeting in November of 2020 and that she gave him her contact information, but she never heard from him. She stated that petitioner failed to attend or participate in the three other MDT meetings following November of 2020 despite notice having been sent to him.

The maternal grandmother testified that she sent petitioner a social media message on July 1, 2020, stating that in-person visitations with the child had resumed and gave him the contact information for the visitation providers. She further stated that the child received no gifts or cards from petitioner and that the child had expressed a desire not to see petitioner. Petitioner testified that he ceased participating in MDT meetings beginning in October of 2020 because he "had trouble using his phone," as he needed help dialing numbers, but stated that he was able to use his social media account. Petitioner denied not leaving messages with the DHHR workers and not contacting them. He stated that he called the visitation provider, but no one answered the phone. Petitioner further denied the grandmother's testimony that she informed him that in-person visits had resumed in July of 2020. Petitioner testified that the visitation provider's building was not wheelchair accessible, but also stated that he did not contact the DHHR about any accessibility concerns or other accommodations due to his disability. Petitioner stated that since May of 2020, he has had a home health worker who helps him with daily living tasks and other chores.

Ultimately, the circuit court found that petitioner had not remedied the lack of a relationship with or abandonment of the child. The court noted that petitioner admitted to being an alcoholic since he was fifteen years old and that he had not been a part of the child's life due to the alcoholism. The court found that petitioner had not emotionally or financially provided for the child throughout the case. The court acknowledged that petitioner's disability had worsened but found that petitioner had made no efforts to request accommodations or utilize existing help to participate in services such as visitations. The court found that petitioner did not attempt to reestablish visits or participate in the last three MDT meetings, where he could have communicated his concerns with accessibility due to his disability. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. The court terminated petitioner's parental rights to L.M. Petitioner appeals the circuit court's October 8, 2021, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

---

[2]The mother voluntarily relinquished her parental rights below. The permanency plan for the child is adoption by the maternal grandmother.

3

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights by failing to provide him with a meaningful improvement period. According to petitioner, he did not have access to the "necessary services to complete said improvement period due to the COVID-19 shutdown and protocols." Petitioner notes that this Court declared a judicial emergency from March 23, 2020, until May 5, 2020, and asserts that it disrupted all court-related procedures and programs in West Virginia. However, we find this argument unavailing, because petitioner ignores the fact that this Court's March 22, 2020, Administrative Order declaring a judicial emergency was clear that "applicable deadlines and time limits" for abuse and neglect proceedings remained in effect. Moreover, the Administrative Order in question had no effect over the DHHR or its imposition of services. As such, any argument petitioner advances on appeal that this Court's declaration of a judicial emergency hampered his ability to participate in services the DHHR offered is unavailing.

Moreover, to the extent that petitioner argues that his disability limited his remote participation because of his inability to operate a telephone during the many telephonic meetings and conferences, we note that he fails to specify what actions he took to request assistance or an accommodation. Petitioner also fails to explain why he could communicate via social media but not via a telephone, especially when he had a home health worker who aided him in daily living tasks. Further, petitioner does not dispute that he failed to attend the last three MDT meetings, during which he could have addressed his disability and need for any type of accommodation. Most critically, in those instances where the DHHR was made aware of petitioner's need for accommodation, such as his request to reschedule his psychological evaluation at a local health care provider's office, petitioner still failed to avail himself of such accommodation when secured. Simply put, we find no merit to petitioner's argument that the circuit court or the DHHR failed to accommodate him during the proceedings.

On the contrary, the record supports, and petitioner concedes on appeal, that he ceased participating in the case in April of 2020 except for attending an MDT meeting in November of 2020. This abandonment of his responsibilities is directly counter to the requirement that "[w]hen any improvement period is granted to a [parent] . . . the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4).

4

The record establishes that the DHHR attempted to help petitioner repair his relationship with the child by facilitating supervised visitations, yet petitioner stopped attending visits in April of 2020 and failed to reestablish visits, even after being informed that the protocol returned to in-person visits. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Further, the record shows that the DHHR provided services to petitioner to address his alcoholism and his abandonment of the child, but petitioner failed to follow through with those services.

West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help." Here, the court made this finding in regard to petitioner based on the substantial evidence outlined above. The court also found that termination of petitioner's parental rights was necessary for the child's welfare, a finding petitioner does not challenge on appeal. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon these findings, and we conclude that termination of petitioner's parental rights was not error.

Petitioner also argues that the circuit court erred in denying him post-termination visitation. Petitioner asserts that he cares for the child, that he had a bond with the child, and that he exercised as much visitation with the child as possible considering the COVID-19 pandemic. We find petitioner's argument unavailing.

In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the circuit court found it was not in the child's best interests to grant visitation. Although petitioner may care for the child, there is no evidence that he developed a close bond with him given the evidence of petitioner's continued abandonment of the child. Further, petitioner failed to fully exercise visitation with the child during the proceedings, including failing to exercise the option to visit virtually. Accordingly, we find no error in the circuit court's denial of petitioner's request for post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn